UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:09-CR-45 |
| | ) | |
| SUNNAH MADDOX, *ET AL.* | ) | |

**REPORT AND RECOMMENDATION**

The defendant Adrian Dorsey has filed two motions to suppress, (Docs. 419 and 420), which have been referred to the United States Magistrate Judge for a report and recommendation under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). A hearing was held on August 24, 2010.

Both motions to suppress center upon the anticipated testimony of a co-defendant, Jamie Rush. Mr. Rush is expected to testify on behalf of the United States and implicate Mr. Dorsey in the criminal activities of yet another co-defendant, Sunnah Maddox.

First, Rush will testify that Mr. Maddox told him that Mr. Dorsey would be assisting in Maddox's drug operation and in running Mr. Maddox's "stash house." Second, Rush will testify that Mr. Dorsey "intercepted" a cell phone call (or cell phone text message) sent by Maddox to a co-defendant, Ebberts, in which Maddox instructed Dorsey to "flush the key." The question is whether Rush's testimony is properly admissible against Mr. Dorsey under F.R.E. 801(d)(2)(E) as the statement of one of his co-conspirators made during the course of and in furtherance of the conspiracy.

As noted, Rush will testify that he was told by Maddox that Mr. Dorsey would be assisting in the operation of Maddox's drug business and with running Mr. Maddox's stash house. First, whether or not Maddox made this statement to Rush is a question that implicates Rush's credibility which the jury will resolve; Mr. Rush of course will testify and be subject to cross examination. The ultimate question is the admissibility of *Maddox's* statement. Presumably Mr. Maddox will not be available for cross examination. Nevertheless, if Maddox made his statement during and in furtherance of the conspiracy, then F.R.E. 801(d)(2)(E) provides that his statement is not hearsay and is admissible.

The burden is upon the United States to prove by a preponderance of the evidence that the conspiracy existed at the time the statements were made and that those statements were made in furtherance of that conspiracy. *See, United States v. Young*, 553 F.3d 1035, 1045 (6th Cir. 2009); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

With respect to proving the existence of a conspiracy and the relationship of the statements to that conspiracy, *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979) approved three alternative and equally acceptable methods for the district court to determine the admissibility of those statements under F.R.E. 801(d)(2)(E). One of those alternatives is to admit the statement subject to a later demonstration of its admissibility by a preponderance of the evidence. *Id*., at 152. It has long been the practice of the district judges in the Eastern District of Tennessee, and particularly in the Northeastern Division, to use this method.

It is noted that F.R.E. 801(d)(2)(E) specifically provides that any statements admitted under that rule are not alone sufficient to establish the existence of the conspiracy and the

participation therein by Mr. Maddox and Mr. Dorsey. In other words, independent corroborating evidence is required. The United States unequivocally maintains that it has such independent corroborating evidence. Whether or not that corroborating evidence in fact exists is a matter that must await the trial of the case; it is not an issue that is subject to pretrial disposition.

The second facet of Mr. Rush's testimony is a bit more confusing. Mr. Rush and Mr. Maddox were together when they were stopped by Johnson City police officers. As that traffic stop was proceeding, a search warrant was being executed at the residence of Maddox and Rush at 2201 Forest Acres Drive in Johnson City. Rush will testify that as they sat beside the road during the traffic stop, Maddox sent a cell phone text message to a co-defendant, Ms. Ebberts; as he sent the text message, Maddox was telling Rush the contents of the message; that the message was, "flush the key;" that although Ebberts was present when the text message was sent and aware of its contents, it actually was Mr. Dorsey, who was with Ebberts and who had her cell phone, who actually received the message from Maddox. At this point, the question arises; how does Mr. Rush, who was sitting beside Maddox alongside the Interstate, know that it was Dorsey who was doing the actual corresponding with Mr. Maddox? The United States insists that it will so prove by (1) Rush's testimony that he was so told by Maddox during the text conversation, based on the fact that Maddox also had a contemporaneous *oral* cell phone conversation with Dorsey, and (2) by Ebberts who was present with Dorsey at the time in question.

Again, it is noted that the United States has the burden of proving that the statement

was made during the course of and in furtherance of the conspiracy, and part of that proof necessarily will be the identity of the participants in the conversation. The United States understands what it must prove at the trial of this case. Most assuredly it is not a matter for pretrial determination and disposition.

As a reminder to all attorneys, both prosecution and defense, they should read paragraph X of the Order on Discovery and Scheduling with reference to their respective obligations regarding F.R.E. 801(b)(2)(E).

It is respectfully recommended that defendant's motions to suppress, Docs. 419 and 420, be denied for the reasons aforesaid.[1]

Respectfully submitted,

        s/Dennis H. Inman
        Dennis H. Inman
        United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).